UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TAMARA L. WALBERG, ) | Case No. C08-956-JCC-JPD |
| Plaintiff, ) | |
| v. ) | |
| ) | REPORT AND RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner, ) | |
| Social Security Administration, ) | |
| Defendant. ) | |

Plaintiff Tamara Walberg appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her application Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be REVERSED and REMANDED for the award of benefits.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff was a forty-year old woman at the time of her hearing. Her education included school through the eleventh grade where she was enrolled in special education classes. Administrative Record ("AR") at 50, 121. She has no past relevant work experience. Plaintiff asserts that she is disabled due to affective disorder, anxiety disorder,

REPORT AND RECOMMENDATION
PAGE – 1

borderline intellectual functioning, post-traumatic stress disorder, and back conditions.

On January 31, 2005, plaintiff filed an application for SSI. AR at 14. The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 38-45. Plaintiff requested a hearing, which took place on August 7, 2007. AR at 288-308. On October 22, 2007, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on a finding that plaintiff could perform a specific job existing in significant numbers in the national economy, namely a small products assembler, electronics assembler and housekeeper. AR at 11-23.

Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 6-8, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). A timely complaint for judicial review was filed by the plaintiff challenging the Commissioner's decision. Dkt. No. 3.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its

judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV. EVALUATING DISABILITY

As the claimant, Ms. Walberg bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four.

At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.

Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

## V. DECISION BELOW

On October 22, 2007, the ALJ issued a decision finding the following:

1. The claimant has not engaged in substantial gainful activity since January 31, 2005, the application date (20 C.F.R. 416.920(b) and 416.971, et seq.).

2. The claimant has the following severe impairments: affective disorder, anxiety disorder, possible borderline intellectual functioning, substance abuse in partial remission, and a back impairment (20 C.F.R. 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that claimant has the residual functional capacity to perform light work. She is able to lift 20 pounds occasionally, 10 pounds frequently, stand or walk for about six hours, and sit for about six hours during an eight hour work day. As to her mental abilities, she can perform one to two step tasks on a regular basis compatible with unskilled and entry level semi-skilled work. She can work with a few coworkers and a supervisor, in jobs not dealing directly with the general public. She can deal with changes within a routine work setting.

5. The claimant has no past relevant work (20 C.F.R. 416.965).

6. The claimant was born on XXXXX[2], 1967, and was 37 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 C.F.R. 416.963).

7. The claimant has a limited education and is able to communicate in English (20 C.F.R. 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 C.F.R. 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 416.960(c) and 416.966).

10. The claimant has not been under a disability, as defined in the Social Security Act, since January 31, 2005, the date the application was filed (20 C.F.R. 416.920(g)).

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

AR at 16-23.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ err in his assessment of whether the plaintiff's impairments met Listing of Impairments §12.05C?

2. Did the ALJ err in his adverse credibility assessment?

3. Did the ALJ err in his assessment of the plaintiff's RFC?

4. Did the ALJ err in his Step 5 analysis?

Dkt. No. 12.

## VII. DISCUSSION

### A. The ALJ Erred in His Assessment of Whether the Plaintiff's Impairments Met Listing 12.05(C)

Step 3 of the sequential evaluation process requires the ALJ to determine whether plaintiff's impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). The listings describe specific impairments in each of the body's major systems that are considered "severe enough to prevent a person from doing most gainful activity." *See* 20 C.F.R. §§ 404.1525, 416.925(a). Severe impairments must be "permanent or expected to result in death," or must last or be expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1525(a), 416.925(a). The ALJ's analysis at step 3 must rely only on medical evidence and not rely on age, education or work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d); *see also Bates v. Barnhart*, 222 F. Supp. 2d 1252, 1258 (D. Kan. 2002). To be found disabled at step 3, plaintiff must prove that she meets or equals each of the characteristics of a listed impairment. 20 C.F.R. §§ 404.1525(a), 416.925(a); *see also, Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). When a plaintiff suffers from multiple impairments and none of them individually satisfies a listing, an ALJ must consider the collective symptoms, signs, and laboratory findings of all of the claimant's impairments to determine whether plaintiff

meets a listing. *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).

Plaintiff argues that the ALJ erred by finding that she did not meet the 12.05(C) Listing, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C), for mental retardation at step 3 of the sequential evaluation process. Dkt. No. 12. She argues that her scores on several mental evaluations satisfied the Listing's requirement and that she should therefore have been found disabled. The Commissioner responds that the ALJ properly evaluated the evidence, and that plaintiff did not meet the 12.05(C) Listing because there was no specific mental retardation diagnosis and because the ALJ found that she had no deficits in adaptive functioning that manifested themselves before the age of 22.

The 12.05(C) Listing describes mental retardation as a condition characterized by

> significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e. . . . before the age of 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 *through* 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 (emphasis added).

Thus, a 12.05(C) Listing requires an ALJ to find plaintiff satisfies three elements: (1) a valid verbal, performance, or full scale IQ score of 60-70; (2) a physical or other mental impairment; and (3) subaverage general intellectual functioning with evidence of adaptive functioning deficits that manifested themselves before the age of 22.

*1. The Plaintiff's IQ Scores Satisfied the 12.05(C) Severity Requirement*

Plaintiff took several intelligence tests.[3] Dr. Meinz conducted a clinical interview and five subtests from the Wechsler Adult Intelligence Scale-III to "obtain some measure of [Plaintiff's] cognitive functioning." Tr. 122. The results of these tests resulted in

---

[3] The regulations indicate that broad based IQ tests such as the Wechsler series are the preferable test method. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(D)(6)(c). They also state that the Peabody Picture Vocabulary Test may also be appropriate. *Id.* at § 12.00(D)(6)(d).

REPORT AND RECOMMENDATION
PAGE – 7

a reported estimated verbal IQ of 70, an estimated performance IQ of 69 and an estimated full scale IQ score of 67. AR at 122, 116. It was, however, Dr. Meinz's "hunch" that, without depression, irritability and upheaval in her life, Ms. Walberg probably functioned within the Borderline range intellectually. AR at 122. In his diagnostic summary, Dr. Meinz reported that Ms. Walberg presented with major depressive episode, single episode of moderate severity, social phobia, and cocaine dependence with two months reported sobriety. AR at 117, 122.

Dr. Meinz also reported that Ms. Walberg presented with borderline intellectual functioning, and she would probably always have to perform work that is unskilled, repetitive and manual. AR at 123. Regarding functional limitations, Dr. Meinz reported that plaintiff was markedly limited in the ability to learn new tasks, the ability to exercise judgment and make decisions, the ability to perform routine tasks, the ability to relate appropriately to coworkers and supervisors, the ability to interact appropriately in public contacts, and the ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting. AR at 118.

The ALJ concluded that the plaintiff failed to present a valid IQ test, relying upon Dr. Meinz's "hunch" and a statement that the testing was administered during a period in which the claimant had recently relapsed into crack cocaine abuse. AR at 19. Neither proffered justification, withstands scrutiny.

First, if the ALJ had legitimate concerns about the validity of the test results, it was his responsibility to make sure those concerns were dealt with appropriately by ordering additional tests, rather than relying upon "hunches." It is the obligation of the ALJ to develop the record where there are ambiguities, and if this means requiring the administration of another battery of IQ tests, then this is what should have happened. The ALJ failed in his "duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *See Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (citations omitted).

This duty arises "when the evidence from the treating medical source is inadequate to make a determination as to the claimant's disability." 20 C.F.R. § 416.912(e); s*ee also* SSR 96-5p; *Thomas*, 278 F.3d at 958.

Second, the record does not indicate plaintiff had relapsed to cocaine use. It indicated that two months *prior* to the test, she had relapsed, but that she had been clean and sober for two months when she took the tests. AR at 121.

Third, when relying upon Dr. Meinz's hunch and the alleged relapse, the ALJ simply ignored the opinions of treating psychiatrist Molli Hinkle, M.D.[4] Her first assessment of the plaintiff was after she had experienced a period of being clean and sober for a period of fourteen months. AR at 188. Dr. Hinkle treated the plaintiff for psychiatric problems from December 2004 through August 2005. She initially assessed the plaintiff's Global Assessment of Functioning (GAF) score at 35. AR at 174.[5] At various times during her

---

[4] As a matter of law, more weight is given to a treating physician's opinion than to that of a nontreating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

[5] The GAF is a subjective determination based on a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning." AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (Text. Rev., 4th ed. 2000). A GAF score of 51-60 indicates "moderate symptoms," such as a flat affect, occasional panic attacks, or "moderate difficulty in social or occupational functioning." *Id.* at 34. A GAF score of 41-50 indicates "[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning," such as the lack of friends and/or the inability to keep a job. *Id.* A GAF

REPORT AND RECOMMENDATION
PAGE – 9

treatment plaintiff's GAF score was reported at 45-50 (AR at 175), 40 (AR at 176), 45-50 (AR at 180), and 45 (AR at 181, 182, 184, 188). The Commissioner is correct that GAF scores do not equate to a residual functional capacity assessment; however, they are routinely used to assist in assessing the impact of mental impairments on the individual's overall level of functioning. GAF levels in this range should require comment by the ALJ. Instead, rather than providing clear and convincing reasons to reject the opinions and assessments of Dr. Hinkle, the ALJ ignored them. These GAF assessments offer support both for the IQ test results obtained from the tests administered by Dr. Meinz, as well as cast doubt on the justification proffered by the ALJ for failing to recognize the IQ scores as valid.

Because the regulations require the ALJ to consider the lowest IQ result in the Wechsler series, plaintiff's verbal IQ of 70, performance range IQ of 69 and full scale IQ of 67 falls within the range set forth by 12.05(C). 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(D)(6)(c). The reasons for rejecting the scores offered by the ALJ are not supported by substantial evidence. Plaintiff therefore satisfied the first prong of 12.05(C)'s severity requirement.

### 2. *The Record Is Undisputed that Plaintiff Suffered from "An Additional and Significant Work-Related Limitation of Function."*

An impairment satisfies this requirement when its impact on a claimant's ability to perform basic work activities is more than slight or minimal. *Fanning v. Bowen*, 827 F.2d 631, 633 (9th Cir. 1986) (internal citations omitted). A step 2 finding of a severe impairment therefore satisfies this test. *Id.* at n.3 (emphasizing, however, that a specific severity finding is not required to satisfy this standard). Here, the record is undisputed that the plaintiff had physical impairments in addition to her alleged mental retardation. Among other things, the ALJ found plaintiff to suffer from a severe back impairment. AR at 17. She also suffers

---

score of 31-40 indicates some impairment in reality testing . . . [or] major impairment in several areas such as work or school, family relations, judgment, thinking or mood. *Id*.

REPORT AND RECOMMENDATION
PAGE – 10

from additional mental impairments that the ALJ found to impact her vocational functioning. AR at 17. Thus, plaintiff also satisfied 12.05(C)'s requirement that she suffer from a "physical or other mental impairment imposing an additional and significant work-related limitation or function."

### 3. *The Plaintiff Had Significant Subaverage General Intellectual Functioning and Deficits of Adaptive Functioning that Manifested Themselves Before the Age of 22*

A 12.05(C) Listing of mental retardation requires the ALJ to find that plaintiff has "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested . . . before the age of 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. While the Ninth Circuit has not yet spoken on what satisfies this diagnostic requirement, other circuits have found IQ to be an important indicator of subaverage intellectual functioning. Additionally, when determining whether claimants demonstrate deficits in adaptive functioning, courts look to a variety of factors that focus on the claimant's ability to lead an independent life.

### a. Plaintiff's IQ Demonstrates Subaverage Intellectual Functioning Manifesting Before the Age of 22

IQ scores are a common indicator of subaverage intellectual functioning. Several circuits have found that plaintiffs create a rebuttable presumption that their developmental IQ was the same as their current IQ when they present a valid IQ score from their post-developmental period. *See, e.g.*, *Branham v. Heckler*, 775 F.2d 1271, 1274 (4th Cir. 1985) (absent contrary evidence, an IQ test taken after the insured period correctly reflects claimant's IQ during the insured period); *accord* Luckey v. U.S. Dep'. of Health & Human Srvs., 890 F.2d 666, 668-69 (4th Cir. 1989) (courts should assume IQ remains constant and that an absence of an IQ test during the developmental period does not preclude a finding of retardation); *see also Guzman v. Bowen*, 801 F.2d 273, 275 (7th Cir. 1986) (per curiam) (IQ test taken after expiration of insured period sufficient to establish IQ during insured period);

*Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001) presuming that a person's IQ remain stable over time in the absence of any change in intellectual functioning); *but see Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (upholding ALJ's finding that claimant was not retarded, in part because plaintiff's IQ testing was not contemporaneous with her developmental period); *Markle v. Barnhart*, 324 F.3d 182, 188 (3d Cir. 2003) (declining to create such a presumption). The Eleventh Circuit has gone further to find that claimants presumptively meet the 12.05(C) disability requirements when they present a valid IQ score and evidence of an additional impairment. *Hodges v. Barnhart*, 276 F.3d 1265, 1268-69 (11th Cir. 2001).

Courts that use evidence of mental retardation from the post-developmental period to raise a rebuttable presumption that the condition existed during the developmental period implicitly base their decisions on the medical fact that, absent some traumatic event, intelligence remains fairly constant throughout one's life. *See*, *e.g.*, *Hodges*, 276 F.3d at 1268-69.

The Commissioner's own explanation of the 12.05(C) Listing supports this interpretation. In the Federal Register, the Commissioner acknowledged that intelligence testing from the development period should not be required to satisfy the 12.05(C) Listing. According to the Commissioner, the Social Security Administration does "not necessarily require evidence from the developmental period to establish that the impairment began before the end of the developmental period" and has "always interpreted [the term "manifested"] to include the common clinical practice of inferring a diagnosis of mental retardation when the longitudinal history and evidence of current functioning demonstrate that the impairment existed before the end of the developmental period." Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50,776-01, 50,753, 50,772 (Aug. 20, 2000) (to be codified at 20 C.F.R. §§ 404, 416. This Court believes the rationale adopted in *Hodges* is the correct interpretation of the regulations and adopts it.

Here, plaintiff's IQ scores indicate that she was presumptively mentally retarded

during her developmental years. The Wechsler standardized test IQ, administered many years after the age of 22, scored her verbal IQ at 70, her performance range IQ of 69 and her full scale IQ at 67. AR at 122. These facts constitute substantial evidence that plaintiff manifested "evidence of significantly subaverage intellectual functioning" during her developmental period.

### b. Plaintiff Demonstrated Deficits in Adaptive Functioning

When determining whether claimants demonstrate deficits in adaptive functioning, courts look to a variety of factors that focus on the claimant's ability to lead an independent life. For instance, the Eastern District of Washington has emphasized that a claimant's participation in special education classes can be indicative of deficits in adaptive functioning. *See Ware ex rel. v. Shalala*, 902 F. Supp. 1262, 1271 (E.D. Wash. 1995). The Third Circuit has also indicated that a claimant's participation in special education, poor academic performance, and low-skilled work history imply evidence of deficits in adaptive functioning during the developmental period. *See Markle*, 324 F.3d at 189 (remanding for further development of these factors). The Eighth Circuit has as well. *See Christner v. Astrue*, 498 F.3d 790, 793 (8th Cir. 2007). Moreover, the Commissioner's comments on the Listing requirements for 12.05(C) indicate these inquiries are accurate. It indicates that 12.05(C) accommodates the American Psychiatric Association's analysis of mental retardation, which looks to an individual's ability to function academically, care for themselves, and live independently. Technical Revisions to Medical Criteria for Determinations of Disability, 67 Fed. Reg. 20,018, 20,022 (April 24, 2002) (to be codified at 20 C.F.R. Pt. 404).

Here, plaintiff was in special education classes, she eventually dropped out of school in the 11th grade, and has never completed her GED. AR at 121, 113, 294. Plaintiff's work history also demonstrates evidence of deficits in adaptive functioning. Plaintiff has been unable to hold a job or perform in the workplace. The ALJ found she had no past relevant work. AR at 21. The ALJ concluded that her poor work history, with reported earnings of

less that $19,000 during her entire lifetime, was evidence of lack of motivation to work. AR at 20. While credibility determinations are usually within the province of the ALJ, the findings must be based on substantial evidence. The ALJ has offered nothing to support his conclusion that her poor work history is attributable to lack of motivation as opposed to her underlying mental impairments.

Together, plaintiff's IQ, educational history, social functioning, and work history demonstrate that she meets the diagnostic requirements of the 12.05(C) Listing. The ALJ erred when he determined that the plaintiff's impairment did not meet Listing 12.05(C).

### B. The ALJ Erred in His Evaluation of the Plaintiff's RFC

The ALJ relied substantially on a portion of Dr. Meinz's assessments of the plaintiff's abilities to find that she was able to function in the work place. AR at 21. However, his RFC did not contain the limitations included by Dr. Meinz. Dr. Meinz opined that the plaintiff could not be around groups of people. He also found that she had marked impairments in her ability to learn new tasks, her ability to exercise judgment and make decisions and her ability to perform routine tasks. AR at 118. The ALJ's RFC took none of these non-exertional impairments into account, when he determined that plaintiff had the ability to "perform one to two step tasks on a regular basis compatible with unskilled and entry level semi-skilled work. She can work with a few coworkers and a superviosr, in jobs not dealing directly the the general public. She can deal with changes within a routine work setting." AR at 19. The ALJ erred in his assessment of the plaintiff's RFC.

### C. The ALJ Erred at Step 5

After a claimant has demonstrated that she has a severe impairment that prevents her from doing her past relevant work, she has made a *prima facie* showing of disability. *Tackett*, 180 F.3d at 1100-01. The burden then shifts to the Commissioner at step 5 to demonstrate that, in light of the claimant's RFC, age, education, and work experience, she can perform other types of work that exist in "significant numbers" in the national economy.

*Id.*; 20 C.F.R. § 404.1560(b)(3).

There are two ways that the Commissioner can meet this burden at step 5. First, the ALJ can use the Medical Vocational Guidelines. 20 C.F.R. Pt. 404, Subpt. P, App. 2. When the Guidelines fail to accurately describe a claimant's limitations, however, the ALJ should not rely on them. *Reddick*, 157 F.3d at 729. Instead, the ALJ should use the Guidelines as a framework in conjunction with testimony from a Vocational Expert ("VE"). *Tackett*, 180 F.3d at 1101. In this method, the ALJ uses the Guidelines' principles, but has the VE testify as to the claimant's ability to work and the availability of certain jobs that the claimant would be able to perform. *Id*. In such a scenario, the ALJ must provide the VE with an accurate and detailed description of the claimant's impairments, as reflected by the medical evidence of record. *Id*.

Here, the ALJ found that the Guidelines could not accurately describe the plaintiff's limitations and thus called a VE to testify. AR at 303-07. However, he failed to pose a hypothetical that included all of plaintiff's impairments. *See* Section VII (B), *supra*. When the limitations included those mentioned by Dr. Meinz, the physician with whom the ALJ relied to conclude the absence of a Listing, the VE testified that there were no jobs in the national economy that could be performed by the plaintiff. AR at 305-07.

At step 5, the Commissioner bears the burden of proof to establish that the claimant can perform some other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Tackett*, 180 F.3d at 1100. In this case, the Commissioner failed to satisfy that burden for the reasons set forth above. In such instances, there is no requirement for a remand for taking additional evidence. Rather, a remand with directions to calculate disability benefits to be awarded is appropriate. *McCartey*, 298 F.3d at 1076.

D. <u>Remand for Award of Benefits is the Appropriate Relief</u>

As discussed above, the Court can either remand for further proceedings or remand with directions to award benefits. Here, the ALJ failed to mention, let alone provide

REPORT AND RECOMMENDATION
PAGE – 15

clear and convincing evidence, to discount the opinions of Dr. Hinkle, the plaintiff's treating psychiatrist. If credited as true, the ALJ would be required to find the plaintiff disabled, as her impairments would meet or equal a Listing. Moreover, as noted above, the failure of the Commissioner to satisfy his burden at step 5 can warrant the reversal of the decision with directions to award benefits. This case was filed more than four years ago. The plaintiff has been largely homeless, moving with her children from shelter to shelter. Nothing would be gained by sending this matter back for further proceedings. Accordingly, the undersigned recommends that this matter be remanded with instructions to award benefits.

## VIII. CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for the award of SSI benefits.

A proposed order accompanies this Report and Recommendation.

DATED this 1st day of April, 2009.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge